IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | |
|---|---|
| IN RE | ) |
| ISABEL LUCIO, | ) CASE NO. 04-81962-G3-13 |
| Debtor, | ) |

MEMORANDUM OPINION

The court has held a hearing on the "Debtor's Motion for Review of Proposed Adjustment Of Monthly Mortgage Payment and Request for Hearing" (Docket No. 85). The following are the Findings of Fact and Conclusions of Law of the court. A separate conforming Judgment will be entered. To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

Findings of Fact

Isabel Lucio ("Debtor") filed a voluntary petition under Chapter 13 of the Bankruptcy Code on September 29, 2004. A Chapter 13 plan was confirmed, by order entered July 18, 2005. William E. Heitkamp ("Trustee") is the Chapter 13 trustee.

The confirmed Chapter 13 plan provided for Debtor to pay $15,777.14 and $5,963.99 to EMC Mortgage ("EMC"), on two note arrearage claims secured by Debtor's home. The plan sets forth the value of Debtor's home at $58,300. (Docket No. 42).

Debtor and EMC have stipulated that EMC participated in the confirmation of Debtor's plan.

Prior to the filing of the instant Chapter 13 case, Debtor was married to Arturo Lucio. Arturo Lucio and Debtor occupied the home. Debtor testified that, prior to the filing of the petition in the instant case, Debtor and Arturo Lucio were divorced. Debtor testified that she was awarded the home in the divorce. Debtor testified that Arturo Lucio now resides in Laredo, Texas.

The note is not in evidence. EMC contends that only Arturo Lucio, and not Debtor, signed the note. Debtor testified that she initialed the note. Debtor signed the deed of trust with respect to the property. The deed of trust provides, in pertinent part:

> 5. Borrower shall keep the improvements now existing or hereafter erected on the Property insured...If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of coverage that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower

> requesting payment.
>
> \* \* \*
>
> The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender."

(Debtor's Exhibit E).

On November 20, 2006, Debtor filed a modification to the plan. The modification provides for Debtor's regular monthly mortgage payments to be made through the Chapter 13 Trustee. The modification was approved, by order entered February 22, 2007. The modification provides for a Chapter 13 plan payment of $1,525.00 per month. (Docket No. 73).

Prior to August, 2007, Debtor and/or Arturo Lucio maintained insurance on the property. Debtor testified that the insurance policy Debtor purchased for August, 2006 through August, 2007 cost $1,336.50. A disbursement in that amount is reflected in EMC's escrow analysis. (Debtor's Exhibit A).

Debtor testified that, in 2007, Debtor did not purchase insurance. She testified that EMC purchased insurance. The 2007 insurance policy purchased by EMC covered a value of $281,000. The cost of the policy was $5,159.47. (Debtor's Exhibit D).

The parties have stipulated that EMC sent notices to Arturo Lucio, in Laredo, Texas, and that EMC did not send any notices to the property address.

Debtor testified that she believes the value of the property is approximately $75,000.

On May 22, 2008, Trustee received from EMC a notice, increasing Debtor's regular monthly mortgage payment from $712.92 to $1,773.56, based on EMC's escrow analysis. On July 14, 2008, Trustee filed a notice of the increase, and calculated an adjusted Chapter 13 plan payment of $2,648.75. (Docket No. 83).

In the instant motion, Debtor seeks review of the adjustment to Debtor's regular monthly mortgage payment.

Debtor has acquired insurance for August, 2008 through August, 2009, at a cost of $726.00. The policy provides for a limit of $80,000 to the insurance coverage. (Debtor's Exhibit C).

After Debtor acquired insurance, EMC reduced the regular monthly mortgage payment to $1,112.84, effective in September, 2008. This amount includes $475.29 for principal and interest, $174.16 for taxes, and $473.39 for an escrow shortage arising from EMC's payment of the $5,159.47 premium on the 2007 insurance.

<u>Conclusions of Law</u>

The "Chapter 13 Trustee Procedures for Administration of Home Mortgage Payments" adopted by the court on September 29, 2005, and amended on December 20, 2007, provide in pertinent part:

4

4. If the holder of a claim proposes to adjust the amount of the regular contractual installment payment due to a change in the interest rate, or for an escrow for payment of insurance and taxes, the claimant shall give written or electronic notice of the "adjusted amount" to the debtor, debtor's counsel, and the trustee. The claimant may file a copy of the notice with the clerk. The clerk will establish a CM/ECF Code entitled "Notice by Mortgage Holder of Adjusted Payment Amount" that should be utilized for the filing of the notice. The claimant is responsible for assuring that the notice is sent to debtor, debtor's counsel and the trustee. The debtor shall promptly provide the trustee with a copy of any notice of an "adjusted amount" that the debtor receives from a creditor while the case is pending.

5. No post petition adjustment to the contractual installment payments due on a claim dealt with pursuant to § 1322(b)(5) shall be valid unless authorized by the agreement upon which the claim is based, and unless notice of the proposed adjustment is served on the debtor, debtor's attorney, and the chapter 13 trustee, not later than 45 days prior to the date the adjusted amount is due.

6. Upon receipt of a notice pursuant to the preceding paragraph, the trustee shall be authorized to either object to the claim, or disburse the adjusted amount, without seeking a formal modification of the plan.

7. Upon receipt of a notice of an "adjusted amount", the trustee shall file with the Court, a notice of disbursement of the "adjusted amount", and shall serve the notice on the debtor and the debtor's attorney. The debtor shall have 20 days from the date of service of such notice to file an appropriate motion seeking Court review of the proposed adjustment. Disbursements of the adjusted amount are subject to refund/ disgorgement upon ruling by the Court.

Chapter 13 Trustee Procedures for Administration of Home Mortgage Payments, available at http://www.txs.uscourts.gov/bankruptcy/rulesformsproc/mort_proc.pdf.

In the instant case, EMC participated in confirmation of the plan, and filed a proof of claim. Thus, EMC was aware of Debtor's interest in the property. The deed of trust required EMC to give notices at the property address. EMC failed to give effective notice to Debtor as to the purchase of insurance covering an amount more than four times the value of the property.[1] The court concludes that EMC may collect as an escrow reimbursement for August, 2007 through August, 2008 only $1,336.50, the same amount paid for insurance for August, 2006 through August, 2007.

Based on the foregoing, a separate conforming Judgment will be entered.

Signed at Houston, Texas on this 21 day of Nov, 2008.

LETITIA Z. CLARK
UNITED STATES BANKRUPTCY JUDGE

---

[1] EMC's counsel argues that the insurance was purchased in the same amount as the previous year. There is nothing in evidence, other than EMC's self-serving correspondence, to support this argument, or to explain how the amount for the 2007 insurance coverage was determined.

6